REALTY REVENUE CORPORATION, Plaintiff, *v.* WILLIAM WILSON, as Commissioner of Housing and Buildings in the City of New York, Defendant.

Supreme Court, Special Term, New York County, May 21, 1944.

*Arthur J. W. Hilly* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein, Raymond J. Horowitz, Rose Schneph* and *Bernard Friedlander* of counsel), for defendant.

*Irving S. Freedman* and *Howard L. Lilienthal* for Associated Hotel and Residence Clubs, Inc., *amicus curiæ.*

COLLINS, J.   The plaintiff seeks a permanent injunction restraining the Commissioner of Housing and Buildings of the City of New York and his subordinate from enforcing an order issued by the Commissioner on June 3, 1943, predicated on section 248 of the Multiple Dwelling Law, and which order requires the plaintiff's rooming house, located at Nos. 120–128 East Thirty-fourth Street, Manhattan, to be vacated as unfit for human habitation and dangerous to life and health by reason of certain violations of law on the premises.   The most important of the alleged violations consist of the failure to provide a sprinkler system, an interior fire alarm system and fireproof self-closing doors from apartments to public stair halls.

The premier defense is not that the order is invalid or without justification, but rather that by reason of orders of the War Production Board the plaintiff is unable to obtain the necessary materials.

Concededly, the War Production Board has refused a priority rating for the materials needed for the installation of the equipment, because of the superior demands of the armed services therefor. Thus, the question posed by the action is whether the plaintiff should be compelled to effect an evacuation of the premises — occupied by about 500 people — because of plaintiff's incontestable inability to comply with the defendant's order.

In granting the plaintiff a temporary injunction, Justice WALTER, of this court, wrote an opinion which is so cogent and sound that it is to a large extent apposite even after trial. (See 181 Misc. 802.)

To be sure, "the granting of a temporary injunction serves only to hold the matter in statu quo until opportunity is afforded to decide upon the merits. The granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for" (Walker Memorial Baptist Church v. Saunders, 285 N. Y. 462, 474). As observed, however, Mr. Justice WALTER has properly stated the law applicable to the case. The salient facts adduced on the trial do not materially differ from the facts which formed the basis for the preliminary injunction.

In addition to the cases cited by Mr. Justice WALTER to the effect that the Federal emergency laws and regulations supersede conflicting local laws, are Miller v. Kaliwerke Aschersleben Aktien-Gesellschaft (283 F. 746); Buchanan v. Warley (245 U. S. 60); Florida v. Mellon (273 U. S. 12); Brenen v. Dahlstrom Metallic Door Co. (189 App. Div. 685).

In Matter of Rouss (221 N. Y. 81, 91) Judge CARDOZO said: "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided." And, in Municipal Gas Co. v. Public Service Comm. (225 N. Y. 89) Judge CARDOZO declared: "The situation may be summed up in a sentence: The plaintiff's business is menaced along converging avenues of attack. Equity intervenes to save it from impairment, if not destruction."

So, here, the facts squarely present the issue whether equity is to intervene to save the plaintiff's property — valued at $800,000 — from "impairment, if not destruction."

Certain it is that the materials needed for compliance with the defendant's order are presently unavailable to the plaintiff. Equally certain it is that plaintiff's property will suffer

substantial damage if the vacate order is enforced. The property cannot feasibly be put to other use.

The defendant's efforts to make the property fit " for human habitation " and " safe to life and health," is warmly commendable. Indeed, it is his sacred duty to do so. But the plaintiff has rights, too, which appeal strongly to the court's conscience. True, they are property rights, and hence must yield to the infinitely loftier rights of life and health. However, the evidence does not persuade me that the hazard to the life and health of the occupants of the subject premises is so great or imminent as to force their evacuation at this time. The following language of Mr. Justice WALTER bears repetition — " defendant is seeking to enforce a statutory standard   *   *   * of living conditions rather than the specifications of a minimum of what a people engaged in a war can get along with   *   *   *."

The facts here are convincing that the defendant's order is " asserted as the necessary conclusion from mere failure to comply with that statutory standard."

Even the defendant's Chief Inspector White declared in writing that " The records of these buildings indicate them to be of superior construction   *   *   *." Other testimony is to the effect that the form of construction here employed is most unusual in nonfireproof buildings and that such construction is more fire safe than ordinary nonfireproof construction permitted under the present Multiple Dwelling Law. The evidence shows that the exterior walls are generally thicker than exterior walls permissible under the present building code. (Administrative Code of the City of New York, § C26–1.0 *et seq.;* L. 1937, ch. 929, as amd.) Other features indicate superior construction.

Admittedly, the plaintiff was fined more than once for infractions of the building laws. But those infractions do not resolve the present problem. The plaintiff has endeavored to comply with the law. Failure to comply is not plaintiff's fault.

The evidence persuades me that the building in its present condition and in the present circumstances is reasonably safe for human habitation. A superintendent is present and a man is on duty at all times during each twenty-four-hour period. Considering these factors, and the safeguards that have been installed, as well as the Federal Government's ban, together with all the other evidence established on the trial, my conclusion is that the defendant should be enjoined from enforcing the order during the present emergency or until such time as the War Production Board releases the required materials.

Let it be emphasized that the court is not here deciding a general policy for the guidance or direction of the defendant. What is here decided is this particular case, on its own peculiar facts and circumstances — nothing more.

Settle judgment accordingly.